Gregg S. Kleiner, State Bar No. 141311
RINCON LAW LLP
268 Bush Street, Suite 3335
San Francisco, CA 94104
Telephone No.: 415-672-5991
Facsimile No.: 415-680-1712
Email: gkleiner@rinconlawllp.com

Counsel for FRED HJELMESET,
Trustee in Bankruptcy

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| In re<br><br>CHUAN MIN CHANG<br>    *aka* JACK CHANG<br>    *dba* JACK'S CONSTRUCTION<br>and<br>CHIU CHUAN WANG<br>    *aka* ALICE WANG,<br><br>        Debtors. | Case No. 19-51152 MEH<br>Chapter 7<br>Hon. M. Elaine Hammond<br><br>**MOTION TO: (I) SELL REAL PROPERTY SUBJECT TO OVERBID; (II) PAY LIENS, COSTS OF SALE AND REAL ESTATE COMMISSIONS**<br>**(Lot 1, Maricopa, AZ)**<br><br>[No Hearing Required Unless Requested] |

Fred Hjelmeset, Trustee in Bankruptcy of the estate of the above-named Debtors, hereby moves the Court for an order authorizing him to enter into a "Vacant Land/Lot Purchase Agreement" ("Agreement") with 339 Properties LLC ("Buyer") concerning the sale of the estate's right, title and interest in and to undeveloped real property referred to as Papago & N Allegro Rd 020A, APN 510-40-020-A, Maricopa, Pinal County, Arizona ("Lot 1"), for $30,000 and pay liens asserted against Lot 1, costs of sale and real estate commissions, on the terms for fully set forth in the Notice and Opportunity for Hearing on Motion to: (I) Sell Real Property Subject to Overbid; (II) Pay Liens, Costs of Sale and Real Estate Commissions (Lot 1, Maricopa, AZ) ("Notice") filed herewith.

A copy of the Notice is attached hereto as **Exhibit A** and is incorporated by reference.

A copy of the Agreement is attached hereto as **Exhibit B** and is incorporated by reference.

1    DATED:  April 2, 2021                    RINCON LAW LLP

2

3
                                             By:  */s/Gregg S. Kleiner*
4                                                  GREGG S. KLEINER
                                                   Counsel for FRED HJELMESET,
5                                                  Trustee in Bankruptcy

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2

In re

    CHUAN MIN CHANG
       *aka* JACK CHANG
       *dba* JACK'S CONSTRUCTION
and
    CHIU CHUAN WANG
       *aka* ALICE WANG,

       Debtors.

Case No. 19-51152 MEH
Chapter 7
Hon. M. Elaine Hammond

**NOTICE AND OPPORTUNITY FOR HEARING ON MOTION TO: (I) SELL REAL PROPERTY SUBJECT TO OVERBID; (II) PAY LIENS, COSTS OF SALE AND REAL ESTATE COMMISSIONS (Lot 1, Maricopa, AZ)**

[No Hearing Required Unless Requested]

**TO CREDITORS, THE UNITED STATES TRUSTEE AND OTHER PARTIES-IN-INTEREST:**

**PLEASE TAKE NOTICE THAT** Fred Hjelmeset, the duly appointed and acting Chapter 7 Trustee ("Trustee") of the bankruptcy estate ("Estate") of Chuan Min Chang *aka* Jack Chang *dba* Jack's Construction and Chiu Chuan Wang *aka* Alice Wang (collectively, "Debtors"), has filed a motion for an order authorizing him to: (i) sell to 339 Properties LLC ("Buyer") undeveloped real property referred to as Papago & N Allegro Rd 020A, APN 510-40-020-A ("Lot 1"), Maricopa, Pinal County, Arizona, for $30,000;[1] and (ii) pay liens asserted against Lot 1, costs of sale and real estate commissions.

In the event that there is an overbid auction, the auction will take place telephonically on April 19, 2021, at 1 pm Pacific Daylight Time, with dial-in information provided to all qualified bidders and the Buyer. If the sale of Lot 1 is approved, the Trustee estimates that the estate will receive, after paying costs of sale, commissions and liens, is approximately $26,000,

**Background**
The Debtors filed a Voluntary Petition under Chapter 13 of the Bankruptcy Code on June 6, 2019. On November 12, 2020, the Court converted the Debtors' case from Chapter 13 to Chapter 7 and the Trustee was appointed to administer the assets of the estate.

According to the Debtors' sworn bankruptcy schedules, the Debtors are the fee owners of Lot 1. Lot 1 is undeveloped real property located in Pinal County, Arizona. Based on the Trustee's review of preliminary title reports for Lot 1, it is subject to liens related to unpaid real property taxes, but are otherwise unencumbered by any third-party liens for loans or liens related to judgments. The Trustee is informed and understands that outstanding liens, tax obligations, and costs related to the sale of Lot 1 are estimated to be approximately $2,200 (collectively, "Estimated Liens").

---

[1] Lot 1 is undeveloped and does not have a physical street address. Parties interested in obtain further information about Lot 1, including a copy of the legal description for the property should contact the Trustee's broker, Nathan Genovese bktrusteerealestate@gmail.com A true and correct copy of the Purchase Agreement for Lot 1 with the Buyer is attached as Exhibit B to the Motion to: (I) Sell Real Property Subject to Overbid; (II) Pay Liens, Costs of Sale and Real Estate Commissions (Lot 1, Maricopa, AZ). Parties seeking a copy of the Purchase Agreement should contact the undersigned at gkleiner@rinconlawllp.com.

1

**EXHIBIT A**

## Purchase Offer

The Trustee has accepted a purchase offer for Lot 1 in the aggregate amount of $30,000, from the Buyer. The sale to the Buyer of the estate's right, title, and interest in Lot 1 is subject to overbid and Court approval. The Buyer has requested and the Trustee seeks herein a finding that the Buyer is a good faith purchaser pursuant to 11 U.S.C. § 363(m). In the event that there is an overbid, the Trustee anticipates that the overbidder, too, will seek a § 363(m) finding. The Trustee requests that the sale order provide that, in the event that the Buyer does not timely close the transaction, the Trustee shall be authorized to seek to sell Lot 1 under substantially the same terms and conditions and at the same or a higher price to an alternative purchaser, without the need of further notice to creditors or by further order of the Court.

The Trustee requests that the sale order provide that "This order is effective upon entry and the stay otherwise imposed by Rule 62(a) of the Federal Rules of Civil Procedure and/or Bankruptcy Rule 6004(h) shall not apply."

## Payment of Liens, Real Estate Commission and Costs

The Trustee shall pay the following obligations from the sale proceeds:(a) the Estimated Liens; (b) a real estate commission equal to 6% of the gross purchase price ($30,000, to be divided between the real estate broker detailed in the following paragraph); and (c) ordinary closing costs of sale and other payments that are made in sales of real property in Pinal, Arizona. After payment the foregoing, the balance of the sale proceeds will be delivered to the Trustee. The Trustee estimates that, after making the foregoing distributions/payments, the estate will receive approximately $26,000 from the sale proceeds.

Subject to Court approval, the Trustee intends to pay from the sale proceeds a commission equal to 6% of the gross sale price, to be divided between the estate's broker, Nathan Genovese of RE/MAX Gold (25% - $225) and Beth Jo Zeitzer of ROI Properties (75% - $675), and the Buyer's broker. The broker's commission and estimated costs will increase in the event that Lot 1 is sold at overbid for a higher price.

## Sale Subject to Overbid

The sale of Lot 1 is subject to overbid. In the event that there is an overbid for Lot 1, the overbid auction will take place telephonically on **April 19, 2021, at 1:00 pm**, Pacific Daylight Time. All qualified overbidders and the Buyer and their respective real estate agents and brokers will be provided a telephone dial-in number in advance of the telephonic auction.

The following terms shall apply to all parties seeking to make an overbid for Lot 1:

1.      On or before **April 15, 2021, at 5:00 pm PDT**, bidders must (i) provide evidence to the Trustee at fhtrustee@gmail.com  (with a copy to Trustee's counsel – gkleiner@rinconlawllp.com), that they can close and pay the purchase price in cash, (ii) deliver to the Title Company, a $2,500 deposit ("Deposit"), and (iii) agree to be bound by the terms of the sale agreement (except the amount of the purchase price, which amount will be the amount of a party's highest offer). The Deposit must be delivered to: Pioneer Title Agency ("Title Company"), Attn: Jennifer Siverio at (602) 943-0184, jennifer.siverio@ptaaz.com.

2.      The initial overbid must be at least $1,500 greater than the Buyer's offer – i.e., $31,500. Thereafter, additional bidding shall proceed in minimum increments of $500.

3.      In the event that a qualified bidder is not the successful bidder, it may act as a back-up bidder at its last highest offer. The Deposit will be promptly returned to bidders who do not want to act as back-up bidders.

4.      Bids may not contain any contingencies, whatsoever, including, but not limited to, any loan contingencies and inspection contingencies. The bidders must agree and acknowledge that they are purchasing Lot 1, "as is, where is" with all faults and defects and with no representations or warranties.

2

**EXHIBIT A**

5. In the event there is an overbid, the overbid auction will occur by telephone on **April 19, 2021**, at 1:00 pm Pacific Daylight Time, with dial-in information provided to all qualified overbidders and the Buyer. Prior to the start of the auction, the Trustee will (i) identify any party or parties that have made a qualified bid for Lot 1, and (ii) set forth the auction rules on the record, and may amend, modify or alter any bid procedure, rule or provision as the Trustee deems necessary, just or appropriate. The Trustee reserves the right, in his sole and absolute discretion, to refuse bids that do not, in his sole opinion, conform with the terms of the sale, to modify the terms and conditions of the sale or auction, to continue the sale from time to time. Only qualified bid participants may attend the overbid auction. All disputes with regard to the sale or auction will be resolved by the U.S. Bankruptcy Court. At the conclusion of the auction, the Trustee, in her sole discretion, will determine the highest and best bid and make a recommendation to the Bankruptcy Court to approve the sale of Lot 1.

6. The successful bidder for Lot 1 must close escrow by tendering the entire purchase price to the Trustee, less a credit for any deposit held by escrow, not later than ten (10) days after the sale order is entered. If the successful bidder fails to timely close, it will forfeit its deposit to the estate for all purposes. In the event of such a default, the Trustee will, without further order of the Court, be free to sell Lot 1 to another party at the back-up bidder's last highest offer. The back-up bid shall have seven (7) business days, from the date that his/her/its counsel/agent has been notified by email by Trustee's counsel of the default by the original successful bidder, to close escrow. Should the back-up bidder fail to timely tender the purchase price for any reason, they shall be in default, and the deposit that they have tendered to the Trustee shall be forfeited to the estate for all purposes.

**PLEASE TAKE NOTICE THAT** due to the shelter in place requirements caused by the COVID-19 pandemic, all appearances will be by telephone, or, in the Court's sole discretion, by video conference. Instructions on how to file opposition, if any, and how to appear by phone are contained provided at the following link on the Court's website   https://www.canb.uscourts.gov/content/page/court-operations-during-covid-19-outbreak   and   further detailed in the Court's Sixth Amended General Order 38, effective March 5, 2021.

The Court's Sixth Amended General Order specifies the following: "All interested parties should consult the Bankruptcy Court's website at www.canb.uscourts.gov for information about court operations during the COVID-19 pandemic. The Bankruptcy Court's website provides information regarding how to arrange a telephonic or video appearance. If you have any questions regarding how to appear at a court hearing, you may contact the Bankruptcy Court by calling 888-821-7606 or by using the Live Chat feature on the Bankruptcy Court's website."

All Bankruptcy Court locations are closed to the general public, and no court staff will be physically present to assist any attorney, party or other interested person or accept any document for filing at any court location. This closure will remain in effect until otherwise ordered. ECF Registered Participants must file all documents electronically. All other parties may submit documents for filing by mail, electronically via the court's website, or in designated drop-box locations. Filing fee payments (no cash) may be submitted electronically, by mail or drop-box. Information regarding electronic submission of documents, mailing addresses, drop-box location and hours, are available under the "Court Operations during the COVID-19 Outbreak Information about Hearings, Filings, and Operations" banner on the court's website:  https://www.canb.uscourts.gov/content/page/court-operations-during-covid-19-outbreak

Documents and filing fees submitted by mail should be sent by U.S. Mail to: United States Bankruptcy Court, 450 Golden Gate Avenue, Mail Box 36099, San Francisco, CA 94102; United States Bankruptcy Court, 280 South First Street, Suite 3035, San Jose, CA 95113; United States Bankruptcy Court. 1300 Clay Street, Suite 300, Oakland, CA 94612; or United States Bankruptcy Court, 99 "E" Street, Santa Rosa, CA 95404.

Documents submitted by e-mail should be sent to: CANB-EMERGENCY-FILINGS@canb.uscourts.gov.

All counsel, parties and other interested persons who intend to appear on a calendared motion or application shall appear telephonically or, at the presiding judge's discretion, by video. Again, absent express order of the presiding judge, there will be no physical access to any courtroom. Instructions for appearing can be found on each individual judge's calendar page on the Bankruptcy Court's website: https://www.canb.uscourts.gov/calendars/judges.

In the event that there is a hearing, counsel, parties and other interested persons may appear telephonically via AT&T or Zoom. Instructions for appearing telephonically can be found on each individual judge's calendar page on the Bankruptcy Court's website: https://www.canb.uscourts.gov/calendars/judges. There will be NO COST for these services

**PLEASE TAKE FURTHER NOTICE THAT** Local Rule 9014-1 of the United States Bankruptcy Court for the Northern District of California prescribes the procedures to be followed with respect to any objection to the proposed sale or any request for hearing thereon.

**Any objection to the requested relief, or a request for hearing on the matter, must be filed and served upon the initiating party within 21 days of mailing the notice;**

**Any objection or request for a hearing must be accompanied by any declarations or memoranda of law any requesting party wishes to present in support of its position;**

**If there is no timely objection to the requested relief or a request for hearing, the court may enter an order granting the relief by default; and**

**In the event of a timely objection or request for hearing, the initiating party will give at least seven days' written notice of the hearing to the objecting or requesting party, and to any trustee or committee appointed in the case.**

**PLEASE TAKE FURTHER NOTICE THAT** as of January 1, 2005, the United States Bankruptcy Court for the Northern District of California has adopted mandatory electronic filing. If you are not currently qualified to file papers with the Court electronically, you should consult the Court's website (www.canb.uscourts.gov).


DATED:   April 2, 2021          RINCON LAW LLP


By:   */s/ Gregg S. Kleiner*
     GREGG S. KLEINER
     Counsel for FRED HJELMESET, Trustee in Bankruptcy

Gregg S. Kleiner, State Bar No. 141311
RINCON LAW LLP
268 Bush Street, Suite 3335
San Francisco, CA  94104
Telephone No.:  415-672-5991
Facsimile No.:   415-680-1712
Email: gkleiner@rinconlawllp.com

4

**EXHIBIT A**

R.O.I. Properties

# COUNTER OFFER ___1___



ARIZONA association of REALTORS®
REAL SOLUTIONS. REALTOR® SUCCESS.

*The pre-printed portion of this form has been drafted by the Arizona Association of REALTORS®. Any change in the pre-printed language of this form must be made in a prominent manner. No representations are made as to the legal validity, adequacy and/or effects of any provision, including tax consequences thereof. If you desire legal, tax or other professional advice, please consult your attorney, tax advisor or professional consultant.*

Document updated: June 2020


REALTOR®  EQUAL HOUSING OPPORTUNITY

1. This is a Counter Offer originated by: ☒ Seller ☐ Buyer ☐ Landlord ☐ Tenant
2. This is a Counter Offer to the  ☒ Offer ☐ Counter Offer dated ___03/10/2021___ between the following Parties:
3. Seller/Landlord: Fred Hjelmeset, Ch 7 Trustee for the Bankruptcy Estate of Chuan Min Chang aka Jack Chang dba Jack's Construction and Chiu Chuan Wang aka Alice Wang, Case #19-51152
4. Buyer/Tenant: 339 Properties LLC
5. Premises Address: Papago Rd & Allegro Rd 510-40-020A, Maricopa, AZ 85139
6. Acceptance of this Offer and/or Counter Offer is contingent upon agreement to the following:
7. 1. Line 9 of the Purchase Contract shall be amended to: Full Purchase Price $30,000.
8. 2. Line 10 of the Purchase Contract shall be amended to: Earnest money $2,000.
9. 3. Line 195 of the Purchase Contract shall be amended to: Due diligence period shall be
10. fourteen (14) days after contract acceptance.
11. 4. Line 413 of the Purchase Contract shall be amended to: Terms of Acceptance shall be 03.16.2021, 5pm
12. 5. All other previously agreed to terms and conditions remain unchanged.
13. _____
14. _____
15. _____
16. _____
17. _____
18. _____

19. **Terms of Acceptance:** Unless acceptance of this Counter Offer is signed by all parties and a signed copy delivered in person, by mail,
20. facsimile or electronically, and received by the originating party's Broker named in the Contract Section 8q or 9a as applicable
21. by ___03/17/2021___ at ___5___ ☐ a.m. ☒ p.m. , Mountain Standard Time, this Counter Offer shall be considered withdrawn.
22. Except as otherwise provided in this Counter Offer, the Parties accept and agree to all terms and conditions of the above Offer /
23. Counter Offer. Until this Counter Offer has been accepted in the manner described above, the Parties understand that the Premises
24. can be sold or leased to someone else or either Party may withdraw the offer to buy, sell, or lease the Premises. The undersigned
25. acknowledges receipt of a copy hereof.

26. _[signature]_ Date: 3-17-21 Time: _____
27. ☒ Seller ☐ Buyer ☐ Landlord ☐ Tenant
28. Frode Hjelmeset aka Fred Hjelmeset, Chapter 7 Trustee for the Bankruptcy Estate of Chang, Case #19-51152, ND, CA Date: _____ Time: _____
29. ☐ Seller ☐ Buyer ☐ Landlord ☐ Tenant

30. ☐ **RESPONSE**

31. An additional Counter Offer is attached, and is incorporated by reference. If there is a conflict between this Counter Offer and the
32. additional Counter Offer, the provisions of the additional Counter Offer shall be controlling.

33. _____ Date: _____ Time: _____
34. ☐ Seller ☐ Buyer ☐ Landlord ☐ Tenant
35. _____ Date: _____ Time: _____
36. ☐ Seller ☐ Buyer ☐ Landlord ☐ Tenant

37. ☒ **ACCEPTANCE**

38. The undersigned agrees to the terms and conditions of this Counter Offer and acknowledges receipt of a copy hereof.
39. _Craig Allen_ Date: 03/18/2021 Time: 8:14 AM MST
40. ☐ Seller ☐ Buyer ☐ Landlord ☐ Tenant
41. _____ Date: _____ Time: _____
42. ☐ Seller ☐ Buyer ☐ Landlord ☐ Tenant

| For Broker Use Only: Brokerage File/Log No. _____ | Manager's Initials _____ | Broker's Initials _____ | Date _____ MO/DA/YR |
|---|---|---|---|

Counter Offer • Updated: June 2020 • Copyright © 2020 Arizona Association of REALTORS®. All rights reserved.

R.O.I. Properties, 2001 E Campbell Ave #202 Phoenix AZ 85016                     Phone: 602-319-1326          Fax: 602-522-2004
Beth Jo Zeitzer                                    Produced with zipForm® by zipLogix, 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com          501-41-028

Electronically Signed using eSignOnline™ [ Session ID : f605e8e3-8eb0-4116-9611-e7868b51b31d ]

**EXHIBIT B**

Turf Realty

# BUYER ATTACHMENT

Document updated:
**October 2019**



*This attachment should be given to the Buyer prior to the submission of any offer and is not part of the Vacant Land/Lot Contract's terms.*



# ATTENTION BUYER!

*You are entering into a legally binding agreement.*

☐ **1. Read the entire contract** *before* **you sign it.**

☐ **2. Review the Seller's Property Disclosure Statement and other disclosures (See Section 4a and 4b).**
- This information comes directly from the Seller.
- Investigate any blank spaces, unclear answers or any other information that is important to you.

☐ **3. Review the Due Diligence Paragraph (see Section 6a).**
Verify square footage/acreage (see Section 6b)
Verify whether the property is served by city or private sewer and its availability status (see Section 6e); OR
If an on-site wastewater treatment system has been installed on the Property (see Section 6e), AND
If a well has been installed on the Property (see Sections 4d and 6k)

☐ **4. Apply for your loan now, if you have not done so already, and provide your lender with all requested information (see Section 2d).**
It is your responsibility to make sure that you and your lender deliver the necessary funds to escrow in sufficient time to allow escrow to close on the agreed upon date.

☐ **5. Read the title commitment (see Section 3c).**

☐ **6. Read the CC&R's, use restrictions, and all other governing documents including design guidelines (see Section 3c), especially if the property is governed by a homeowners association.**

☐ **7. Conduct a thorough final inspection (see Section 6o). If the property is unacceptable, speak up. After the closing may be too late.**

You can obtain information through the Buyer's Advisory at http://www.aaronline.com.

**Remember, you are urged to consult with an attorney, inspectors, and experts of your choice in any area of interest or concern in the transaction.** Be cautious about verbal representations, advertising claims, and information contained in a listing. *Verify anything important to you.*

**WARNING: *WIRE TRANSFER FRAUD***
Beware of wiring instructions sent via email. Cyber criminals may hack email accounts and send emails with fake wiring instructions. *Always independently confirm wiring instructions prior to wiring any money.* Do not email or transmit documents that show bank account numbers or personal identification information.

☑ *Buyer's Check List*

Buyer Attachment • Updated: October 2019
Copyright © 2019 Arizona Association of REALTORS®. All rights reserved.

Turf Realty, 2610 W. Baseline Rd #106 Phoenix AZ 85041
Phone: (480)818-1345     Fax:          Craig Allen          Papago Land
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

Electronically Signed using eSignOnline™ | Session ID : fbcf67eb-6610-4051-bd13-d0856dari591 ]

**EXHIBIT B**

Turf Realty

**VACANT LAND/LOT**
# PURCHASE CONTRACT



ARIZONA
association of
**REALTORS®**
REAL SOLUTIONS. REALTOR® SUCCESS

*The pre-printed portion of this form has been drafted by the Arizona Association of REALTORS®. Any change in the pre-printed language of this form must be made in a prominent manner. No representations are made as to the legal validity, adequacy and/or effects of any provision, including tax consequences thereof. If you desire legal, tax or other professional advice, please consult your attorney, tax advisor or professional consultant.*



If subdivided land or unsubdivided land is being sold by a subdivider, i.e., a person who owns 6 or more lots, a public report will generally be required and an Addendum regarding subdivided or unsubdivided land must be executed by the Seller and Buyer.

## 1. PROPERTY

**1a.** 1. BUYER: **339 Properties LLC**
BUYER'S NAME(S)

2. SELLER: _____ SELLER'S NAME(S) or ☒ as identified in section 9c.

3. Buyer agrees to buy and Seller agrees to sell the real property with all improvements, fixtures, and appurtenances thereon
4. or incidental thereto, if any, plus the personal property described herein (collectively the "Property").

**1b.** 5. Property Address: **0 W Papago & N Allegro Rd RD 020A** Zoning: _____

6. Assessor's #(s): **510-40-020-A**

7. City: **Maricopa** County: **Pinal** AZ, Zip Code: **85139**

8. Legal Description: **NE SW SE OF SEC 17-5S-2E 10.00 AC** or ☐ see attached legal description.

**1c.** 9. $ **25,000.00** Full Purchase Price, paid as outlined below

10. $ **1,000.00** Earnest money **Deposited with Pioneer Title**

11. $ **24,000.00 Cash at closing**

12. $ _____

13. _____

**1d.** 14. **Incidental Improvements:** Buyer is purchasing the Property as vacant land. Any improvements, fixtures and appurtenances
15. thereon or incidental thereto, are being transferred in their existing condition ("AS IS") and Seller makes no warranty to Buyer,
16. expressed or implied, as to their condition except as provided for in section 5a.

**1e.** 17. **Fixtures and Personal Property:** Seller agrees that all existing fixtures on the Property, and any existing personal property
18. specified herein, shall be included in this sale, including the following:

19. _____
20. _____
21. Personal property included herein shall be transferred with no monetary value, and free and clear of all liens
22. or encumbrances.
23. Fixtures and leased items NOT included: _____

**1f.** 24. **Close of Escrow:** Close of Escrow ("COE") shall occur when the deed is recorded at the appropriate county recorder's office.
25. Buyer and Seller shall comply with all terms and conditions of this Contract, execute and deliver to Escrow Company all closing
26. documents, and perform all other acts necessary in sufficient time to allow COE to occur on

27. **April** **16th** , **2021** ("COE Date"). If Escrow Company or recorder's office is closed on
MONTH       DAY       YEAR

28. COE Date, COE shall occur on the next day that both are open for business.

29. Buyer shall deliver to Escrow Company a cashier's check, wired funds or other immediately available funds to pay any down
30. payment, additional deposits or Buyer's closing costs, and instruct the lender, if applicable, to deliver immediately available
31. funds to Escrow Company, in a sufficient amount and in sufficient time to allow COE to occur on COE Date.

>>

Vacant Land/Lot Purchase Contract • Updated: October 2019
Copyright © 2019 Arizona Association of REALTORS®.
All rights reserved.

Page 1 of 10

SELLER | SELLER <Initials          Initials> *CA*          BUYER | BUYER

Turf Realty, 2610 W. Baseline Rd #106 Phoenix AZ 85041
Phone: (480)818-1345          Fax:          Craig Allen          Papago Land

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

Electronically Signed using eSignOnline™ [ Session ID : fbcf67eb-6610-4051-bd13-d0856ddad591 ]

**EXHIBIT B**

Case: 19-51152    Doc# 185    Filed: 04/02/21    Entered: 04/02/21 06:07:30    Page 9 of 26

*Vacant Land/Lot Purchase Contract >>*

**1g.** 32. **Possession:** Seller shall deliver access to keys and/or means to operate all locks, mailbox, and all common area facilities,
33. subject to the rights of tenants under existing leases, to Buyer at COE or ☐ _____ . Broker(s) recommend that
34. the parties seek appropriate counsel from insurance, legal, tax, and accounting professionals regarding the risks of
35. pre-possession or post-possession of the Property.

**1h.** 36. **Addenda Incorporated:** ☐ Additional Clause  ☐ Buyer Contingency  ☐ Domestic Water Well  ☐ H.O.A.
37. ☐ Loan Assumption ☐ On-site Wastewater Treatment Facility ☐ Seller Financing ☐ Short Sale
38. ☐ Vacant Land/Lot Purchase Contract Addendum Regarding Subdivided or Unsubdivided Land
39. ☒ Other: **Bankruptcy Addendum**

**1i.** 40. **IF THIS IS AN ALL CASH SALE:** Buyer shall provide Seller, within five (5) days or _____days after Contract
41. acceptance, either a Letter of Credit or a Source of Funds Letter from a financial institution documenting the
42. availability of funds to close escrow as agreed. Section 2 shall not apply, GO TO SECTION 3.

## 2. FINANCING

**2a.** 43. **Type of Financing:** ☐ Conventional  ☐ FHA  ☐ VA  ☐ USDA  ☐ Assumption  ☐ Seller Carryback
44. ☒ Cash
45. (If financing is to be other than new financing, see attached addendum.)

**2b.** 46. **Financing: This sale** ☐ **is** ☐ **is not** contingent upon Buyer obtaining a satisfactory financing commitment within Due
47. **Diligence Period pursuant to Section 6a. (If sale is not contingent on a financing commitment, go to Section 2k.)**

**2c.** 48. **Financing Commitment Contingency Period:** If the sale is contingent upon Buyer obtaining a satisfactory financing commitment,
49. Buyer shall have the Due Diligence Period to obtain a financing commitment, including appraised value, satisfactory to Buyer in
50. Buyer's sole discretion, for a loan to purchase the Property or Buyer may cancel this Contract and receive a refund of the Earnest
51. Money. **PRIOR TO THE EXPIRATION OF THE DUE DILIGENCE PERIOD, BUYER SHALL DELIVER TO SELLER AND ESCROW**
52. **COMPANY NOTICE THAT BUYER HAS NOT RECEIVED SUCH SATISFACTORY FINANCING COMMITMENT OR BUYER**
53. **SHALL BE DEEMED TO HAVE WAIVED THE FINANCING COMMITMENT CONTINGENCY AND ANY RIGHT TO CANCEL DUE**
54. **TO FINANCING.**

**2d.** 55. **Pre-Qualification:** If using Conventional, FHA, VA, or USDA financing, a completed AAR Pre-Qualification Form *is*
56. attached hereto and incorporated by reference.

**2e.** 57. **Loan Status Update:** Buyer shall deliver to Seller the Loan Status Update (LSU) with at a minimum lines 1–40 completed
58. describing the current status of the Buyer's proposed loan within ten (10) days after Contract acceptance and instruct lender to
59. provide an updated LSU to Broker(s) and Seller upon request.

**2f.** 60. **Loan Processing During Escrow:** Buyer agrees to diligently work to obtain the loan and will promptly provide the lender with all
61. additional documentation required. **Buyer shall sign all loan documents no later than three (3) days prior to the COE Date.**

**2g.** 62. **Loan Costs:** Buyer shall pay all costs of obtaining the loan, except as provided herein.

**2h.** 63. **VA Loan Costs:** In the event of a VA loan, Seller agrees to pay the escrow fee and up to $ _____ of loan
64. costs not permitted to be paid by the Buyer, in addition to the other costs Seller has agreed to pay herein, including Seller's
65. Concessions.

**2i.** 66. **Changes:** Buyer shall immediately notify Seller of any changes in the loan program, financing terms, or lender described in the
67. Pre-Qualification Form if attached hereto or LSU provided within ten (10) days after Contract acceptance and shall only make
68. any such changes without the prior written consent of Seller if such changes do not adversely affect Buyer's ability to obtain
69. loan approval without Prior to Document (PTD) conditions, increase Seller's closing costs, or delay COE.

**2j.** 70. **Appraisal Fee(s):** Appraisal Fee(s), when required by Lender, shall be paid by ☐ Buyer  ☐ Seller
71. ☐ Other _____
72. Appraisal Fee(s) ☐ are ☐ are not included in Seller Concessions, if applicable.

**2k.** 73. **Partial Release, if applicable:** Buyer and Seller agree that any partial releases will be addressed under Additional Terms
74. and Conditions or attached Addendum. Broker(s) recommend the parties seek appropriate counsel regarding the risks of
75. partial release.

>>

Vacant Land/Lot Purchase Contract • Updated: October 2019
Copyright © 2019 Arizona Association of REALTORS®.
All rights reserved.

<Initials                                    Initials>

SELLER | SELLER                BUYER | BUYER

Page 2 of 10

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com        Papago Land



Electronically Signed using eSignOnline™ [ Session ID : fbcf67eb-6610-4051-bd13-d0856ddad591 ]

<span style="color:blue">**EXHIBIT B**</span>

**2l.** 76. **Subordination:** If applicable, Seller carryback financing ☐ **is** ☐ **is not** to be subordinated to a construction loan. If Seller
77. agrees to subordination, such subordination shall only be allowed if the Seller Carryback financing is not in default and if the
78. Seller approves the terms and conditions of the construction loan to be recorded as a senior loan. Approval will not be
79. unreasonably withheld. **IF SELLER SUBORDINATES THE SELLER CARRYBACK FINANCING TO A SENIOR LOAN, THE**
80. **SELLER ACKNOWLEDGES THAT IN ORDER TO PROTECT THE SELLER CARRYBACK FINANCING, THE SELLER MAY**
81. **HAVE TO MAKE PAYMENTS ON THE SENIOR LOAN IF THE SENIOR LOAN IS IN DEFAULT.** Broker(s) recommend
82. the parties seek appropriate counsel regarding the risks of subordination.

## 3. TITLE AND ESCROW

**3a.** 83. **Escrow:** This Contract shall be used as escrow instructions. The Escrow Company employed by the parties to carry out the
84. terms of this Contract shall be:

85. <u>Jennifer Siverio</u>                                                                                      <u>(602)943-0184</u>
      "ESCROW/TITLE COMPANY"                                                                                      PHONE

86. <u>(480)295-7587</u>                  <u>jennifer.siverio@ptaaz.com</u>
      FAX                                 EMAIL

87. _____
      ADDRESS

**3b.** 88. **Title and Vesting:** Buyer will take title as determined before COE. Taking title may have significant legal, estate planning and
89. tax consequences. Buyer is advised to obtain legal and tax advice.

**3c.** 90. **Title Commitment and Title Insurance:** Escrow Company is hereby instructed to obtain and deliver to Buyer and Seller
91. directly, addressed pursuant to 8s and 9c or as otherwise provided, a Commitment for Title Insurance together with complete
92. and legible copies of all documents that will remain as exceptions to Buyer's policy of Title Insurance ("Title Commitment"),
93. including but not limited to Conditions, Covenants and Restrictions ("CC&Rs"); deed restrictions; and easements within fifteen
94. (15) days after Contract acceptance. Buyer shall have prior to the expiration of the Due Diligence Period to provide written
95. notice of any items disapproved. Buyer shall be provided, at Seller's expense, a Standard Owner's Title Insurance Policy
96. showing the title vested in Buyer. Buyer may acquire extended coverage(s) at Buyer's own additional expense.

97. Seller shall convey title by warranty deed, subject to existing taxes, assessments, covenants, restrictions, rights of way,
98. easements and all other matters of record or ☐ _____ deed.

**3d.** 99. **Additional Instructions:** (i) Escrow Company shall promptly furnish notice of pending sale that contains the name and
100. address of the Buyer to any homeowner's association in which the Property is located. (ii) If the Escrow Company is also
101. acting as the title agency but is not the title insurer issuing the title insurance policy, Escrow Company shall deliver to the
102. Buyer and Seller, upon deposit of funds, a closing protection letter from the title insurer indemnifying the Buyer and Seller for
103. any losses due to fraudulent acts or breach of escrow instructions by the Escrow Company. (iii) All documents necessary to
104. close this transaction shall be executed promptly by Seller and Buyer in the standard form used by Escrow Company. Escrow
105. Company shall modify such documents to the extent necessary to be consistent with this Contract. (iv) Escrow Company fees,
106. unless otherwise stated herein, shall be allocated equally between Seller and Buyer. (v) Escrow Company shall send to all
107. parties and Broker(s) copies of all notices and communications directed to Seller, Buyer and Broker(s). (vi) Escrow Company
108. shall provide Broker(s) access to escrowed materials and information regarding the escrow. (vii) If an Affidavit of Disclosure is
109. provided, Escrow Company shall record the Affidavit at COE.

**3e.** 110. **Prorations, Expenses and Adjustments:**
111. *Taxes:* Real property taxes payable by the Seller shall be prorated through COE, based upon the latest tax bill available.
112. The parties agree that any discrepancy between the latest tax bill available and the actual tax bill when received shall be
113. handled as a Post Closing Matter and Buyer or Seller may be responsible for additional tax payments to each other.

114. *Rents, Interest and Expenses:* Rents; interest on existing notes, if transferred; utilities; and operating expenses shall be
115. prorated through COE. The Parties agree to adjust any rents received after COE as a Post Closing Matter.

116. *Deposits:* All deposits held by Seller pursuant to rent/lease agreement(s) shall be credited against the cash required of
117. Buyer at COE or ☐ paid to Buyer at COE.

**3f.** 118. **Post Closing Matters:** The parties shall promptly adjust any item to be prorated that is not determined or determinable at
119. COE as a Post Closing Matter by appropriate cash payment to the other party outside of the escrow when the amount due is
120. determined. Seller and Buyer agree that Escrow Company and Broker(s) are relieved of any responsibility for said
121. adjustments.

>>

| | |<Initials | | | Initials> | *CA* | |
|---|---|---|---|---|---|---|---|
| SELLER | SELLER | | | | | BUYER | BUYER |

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com

Papago Land

Electronically Signed using eSignOnline™ [ Session ID : fbcf67eb-6610-40514d13-d0856ddad591 ]

**EXHIBIT B**

*Vacant Land/Lot Purchase Contract >>*

**3g.** 122. **Release of Earnest Money:** In the event of a dispute between Buyer and Seller regarding any Earnest Money deposited with
123. Escrow Company, Buyer and Seller authorize Escrow Company to release Earnest Money pursuant to the terms and conditions
124. of this Contract in its sole and absolute discretion. Buyer and Seller agree to hold harmless and indemnify Escrow Company
125. against any claim, action or lawsuit of any kind, and from any loss, judgment, or expense, including costs and attorney fees,
126. arising from or relating in any way to the release of Earnest Money.

**3h.** 127. **Assessment Liens:** The amount of any assessment, other than homeowner's association assessments, that is a lien as of
128. the COE shall be: ☒ paid in full by Seller ☐ prorated and assumed by Buyer ☐ paid in full by Buyer. Any assessment that
129. becomes a lien after COE is the Buyer's responsibility.

**3i.** 130. **IRS and FIRPTA Reporting:** Seller agrees to comply with IRS reporting requirements. If applicable, Seller agrees to complete,
131. sign, and deliver to Escrow Company a certificate indicating whether Seller is a foreign person or a non-resident alien pursuant
132. to the Foreign Investment in Real Property Tax Act (FIRPTA). Buyer and Seller acknowledge that if the Seller is a foreign
133. person, the Buyer (or Escrow Company, as directed by Buyer) must withhold a tax of up to 15% of the purchase price, unless an
134. exemption applies.

**3j.** 135. **Agricultural Foreign Investment Disclosure Act:** If applicable, Buyer and Seller shall comply with the Agricultural Foreign
136. Investment Disclosure Act and make the required disclosures to the U.S. Department of Agriculture.

**3k.** 137. **TAX DEFERRED EXCHANGE:** If Seller or Buyer intends to enter into a tax-deferred exchange pursuant to I.R.C. §1031
138. or otherwise, all additional costs in connection with any such tax-deferred exchange shall be borne by the party requesting the
139. exchange. The non-requesting party agrees to cooperate in the tax-deferred exchange provided that the non-requesting party
140. incurs no additional costs and COE is not delayed. The parties are advised to consult a professional tax advisor regarding the
141. advisability of any such exchange. The non-requesting party and Broker(s) shall be indemnified and held harmless from any
142. liability that may arise from participation in the tax deferred exchange.

## 4. DISCLOSURES

**4a.** 143. **Vacant Land/Lot Seller Property Disclosure Statement ("VLSPDS"):** Seller shall deliver a completed AAR VLSPDS form to
144. the Buyer within five (5) days after Contract acceptance.

**4b.** 145. **Additional Seller Disclosures and Information:** Seller shall provide to Buyer the following disclosures and information
146. pertinent to the Property within five (5) days after the Contract acceptance: (i) any information known to Seller that may
147. adversely affect the Buyer's use of the Property, (ii) any known pending special assessments, association fees, claims, or
148. litigation, (iii) articles of incorporation; by-laws; other governing documents; and any other documents required by law, (iv)
149. financial statements, current rent rolls, lists of current deposits, personal property lists, leases, rental agreements, service
150. contracts, (v) soils, Phase I, or other environmental reports in Seller's possession, (vi) the most recent survey, if available,
151. and (vii) any and all other agreements, documents, studies, or reports relating to the Property in Seller's possession or control
152. provided, however, that Seller shall not be required to deliver any report or study if the written contract that Seller entered into
153. with the consultant who prepared such report or study specifically forbids the dissemination of the report to others.

**4c.** 154. **Road Maintenance Agreement:** Seller shall provide to Buyer, within five (5) days after the Contract acceptance, a copy
155. of any known road maintenance agreement affecting the Property.

**4d.** 156. **Seller's Obligations Regarding Wells:** If a well is located on the Property, or if the Property is to be served by a shared
157. well, the AAR Domestic Water Well Addendum is attached hereto and incorporated by reference. At COE, if applicable,
158. Seller shall assign, transfer and convey to the Buyer all of the water rights, or claims to water rights, if any, held by Seller
159. that are associated with the Property.

**4e.** 160. **No Seller or Tenant Bankruptcy, Probate or Insolvency Proceedings:** Seller represents that Seller has no notice or
161. knowledge that any tenant on the Property is the subject of a bankruptcy, probate or insolvency proceeding. Further, Seller
162. is not the subject of a bankruptcy, insolvency or probate proceeding.

**4f.** 163. **Seller's Notice of Violations:** Seller represents that Seller has no knowledge of any notice of violations of City, County, State,
164. or Federal building, zoning, fire, or health laws, codes, statutes, ordinances, regulations, or rules filed or issued regarding the
165. Property.

**4g.** 166. **Environmental Disclosure:** Seller has not knowingly caused or permitted the generation, storage, treatment, release or
167. disposal of any hazardous waste or regulated substances at the Property except as otherwise disclosed.

**4h.** 168. **Affidavit of Disclosure:** If the Property is located in an unincorporated area of the county, and five or fewer parcels of property
169. other than subdivided land are being transferred, the Seller shall deliver a completed Affidavit of Disclosure in the form required
170. by law to the Buyer within five (5) days after Contract Acceptance. Buyer shall provide notice of any Affidavit of Disclosure items
171. disapproved within five (5) days after receipt of the Affidavit of Disclosure.

>>

Copyright © 2019 Arizona Association of REALTORS®.
All rights reserved.

| SELLER | SELLER | <Initials | | Initials> | CA | | |
| --- | --- | --- | --- | --- | --- | --- | --- |
| | | | | | BUYER | BUYER | |

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com
Papago Land

Electronically Signed using eSignOnline™ [ Session ID : fbcf67eb-6610-4051-bd13-a0856ddad591 ]

**EXHIBIT B**

**Vacant Land/Lot Purchase Contract >>**

**4i.** 172. **H.O.A. / Condominium / Planned Community:** The Property ☐ **is** ☐ **is not** located within a homeowners' association/
173. condominium/planned community. If yes, the HOA addendum is attached hereto and incorporated by reference.

**4j.** 174. **Changes During Escrow:** Seller shall immediately notify Buyer of any changes in the Property or disclosures made herein, in the
175. SPDS, or otherwise. Such notice shall be considered an update of the SPDS. Unless Seller is already obligated by Section 5a, or
176. otherwise by this Contract or any amendments hereto, to correct or repair the changed item disclosed, Buyer shall be allowed prior
177. to the expiration of the Due Diligence Period or five (5) days after delivery of such notice, whichever is later, to provide notice of
178. disapproval to Seller.

# 5. WARRANTIES

**5a.** 179. **Seller Warranties:** Seller warrants and shall maintain and repair the Property so that at the earlier of possession or COE the
180. Property and any personal property included in the sale, will be in substantially the same condition as on the date of Contract
181. acceptance; and all personal property not included in the sale and all debris will be removed from the Property.

**5b.** 182. **Warranties that Survive Closing:** Seller warrants that Seller has disclosed to Buyer and Broker(s) all material latent defects and
183. any information concerning the Property known to Seller, excluding opinions of value, which materially and adversely affect the
184. consideration to be paid by Buyer. Prior to the COE, Seller warrants that payment in full will have been made for all labor,
185. professional services, materials, machinery, fixtures, or tools furnished within the 150 days immediately preceding the COE
186. in connection with the construction, alteration, or repair of any structure on or improvement to the Property. Seller warrants
187. that the information regarding connection to a sewer system or on-site wastewater treatment facility (conventional septic
188. tank or alternative system) is correct to the best of Seller's knowledge.

**5c.** 189. **Buyer Warranties:** Buyer warrants that Buyer has disclosed to Seller any information that may materially and adversely affect
190. the Buyer's ability to close escrow or complete the obligations of this Contract. At the earlier of possession of the Property or
191. COE, Buyer warrants to Seller that Buyer has conducted all desired independent inspections and investigations and accepts
192. the Property. **Buyer warrants that Buyer is not relying on any verbal representations concerning the Property**
193. **except disclosed as follows:** _____
194. _____

# 6. DUE DILIGENCE

**6a.** 195. **Due Diligence Period:** Buyer's due diligence and inspection period shall be thirty (30) days or _____ days after Contract acceptance
196. ("Due Diligence Period"). During Due Diligence Period Buyer shall perform all inspections and investigations to satisfy Buyer with respect
197. to the physical condition of the Property, financing, appraised value, the condition of title to the Property and as to the feasibility and
198. suitability of the Property for Buyer's intended purpose. During the Due Diligence Period, Buyer, at Buyer's expense, shall: (i) conduct all
199. desired physical, environmental, and other types of inspections and investigations to determine the value and condition of the Property;
200. (ii) make inquiries and consult government agencies, lenders, insurance agents, architects, and other appropriate persons and entities
201. concerning the feasibility and suitability of the Property and the surrounding area for the Buyer's intended purpose; (iii) investigate
202. applicable building, zoning, fire, health, and safety codes including applicable swimming pool barrier regulations to determine any
203. potential hazards, violations or defects in the Property; and (iv) verify any material multiple listing service ("MLS") information. If the
204. presence of sex offenders in the vicinity or the occurrence of a disease, natural death, suicide, homicide or other crime on or in the vicinity
205. is a material matter to the Buyer, it must be investigated by the Buyer during the Due Diligence Period. Buyer shall keep the Property free
206. and clear of liens, shall indemnify and hold Seller harmless from all liability, claims, demands, damages, and costs, and shall repair all
207. damages arising from the inspections. Buyer shall provide Seller and Broker(s) upon receipt, at no cost, copies of all inspection reports
208. concerning the Property obtained by Buyer. If Buyer cancels this Contract, Buyer shall return all documents provided by the Seller and
209. provide Seller with copies of all reports or studies generated by Buyer, provided, however, that Buyer shall not be required to deliver any
210. such report or study if the written contract that Buyer entered into with the consultant who prepared such report or study specifically
211. forbids the dissemination of the report or study to others. Buyer is advised to consult the Arizona Department of Real Estate *Buyer*
212. *Advisory* provided by AAR to assist in Buyer's due diligence inspections and investigations.

**6b.** 213. **Square Footage/Acreage:** BUYER IS AWARE THAT ANY REFERENCE TO THE SQUARE FOOTAGE/ACREAGE OF THE
214. PROPERTY, BOTH THE REAL PROPERTY (LAND) AND IMPROVEMENTS THEREON IS APPROXIMATE. IF SQUARE
215. FOOTAGE/ACREAGE IS A MATERIAL MATTER TO THE BUYER; IT MUST BE INVESTIGATED DURING THE DUE
216. DILIGENCE PERIOD.

**6c.** 217. **Flood Hazard:** Flood hazard designations or the cost of flood hazard insurance shall be determined by Buyer during the Due
218. Diligence Period. If the Property is situated in an area identified as having any special flood hazards by any governmental entity, the
219. lender may require the purchase of flood hazard insurance. Special flood hazards may also affect the ability to encumber or improve
220. the Property.

>>

| SELLER | SELLER | <Initials | Initials> | *CA* | BUYER | BUYER |  |

Page 5 of 10

Papago Land

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com

Electronically Signed using eSignOnline™ | Session ID : fbcf67eb-6610-4051-bd13-d0856ddabf591  [

**EXHIBIT B**

**6d.** 221. **Insurance: IF INSURANCE IS A MATERIAL MATTER TO THE BUYER, BUYER SHALL APPLY FOR AND OBTAIN**
222. **WRITTEN CONFIRMATION OF THE AVAILABILITY AND COST OF INSURANCE FOR THE PROPERTY FROM BUYER'S**
223. **INSURANCE COMPANY DURING THE DUE DILIGENCE PERIOD.** Buyer understands that any fire, casualty, or other
224. insurance desired by Buyer or required by Lender should be in place at COE.

**6e.** 225. **Sewer or On-site Wastewater Treatment System:** The Property ☐ **does** ☐ **does not** contain an on-site wastewater
226. treatment system. If the Property is served by a conventional septic tank or alternative system, the AAR On-site Wastewater
227. Treatment Facility Addendum is incorporated herein by reference.

228. **IF A SEWER CONNECTION, OR THE AVAILABILITY OF A SEWER CONNECTION, IS A MATERIAL MATTER TO THE**
229. **BUYER, IT MUST BE INVESTIGATED DURING THE DUE DILIGENCE PERIOD.**
230.                                                     **(BUYER'S INITIALS REQUIRED)** *CA* _____  _____
                                                                                            BUYER            BUYER

**6f.** 231. **Site/Soil Evaluation For Installation of On-site Wastewater Treatment Facility:** If the suitability of the Property for
232. installation of an on-site wastewater treatment facility (conventional septic tank or alternative system) and associated costs
233. are material to the Buyer, Buyer shall complete a site/soil evaluation and investigate all on-site wastewater treatment facility
234. installation costs within the Due Diligence Period. **NOTE: Buyer is advised that the site/soil evaluation is not binding on**
235. **the State-delegated County agency in any future permitting decision as to the suitability of the design or type of**
236. **facility for the Property.**

**6g.** 237. **LAND DIVISIONS: LAND PROPOSED TO BE DIVIDED FOR PURPOSES OF SALE OR LEASE IS SUBJECT TO**
238. **STATE, COUNTY AND MUNICIPAL LAWS, ORDINANCES AND REGULATIONS. IF STATE, COUNTY AND MUNICIPAL**
239. **REQUIREMENTS RELATING TO THE DIVISION OR SPLITTING OF THE PROPERTY ARE A MATERIAL MATTER TO**
240. **THE BUYER, THEY MUST BE VERIFIED BY BUYER DURING THE DUE DILIGENCE PERIOD. BROKER(S) HAVE MADE**
241. **NO REPRESENTATIONS, EXPRESS OR IMPLIED, REGARDING THE ABILITY TO DIVIDE OR SPLIT THE PROPERTY.**
242.                                                     **(BUYER'S INITIALS REQUIRED)** *CA*
                                                                                            BUYER            BUYER

**6h.** 243. **ROADS: IF ROADWAYS, COST AND RESPONSIBILITY FOR ROAD MAINTENANCE, IMPROVEMENTS OR ACCESS IS A**
244. **MATERIAL MATTER TO BUYER, IT MUST BE INVESTIGATED BY BUYER DURING DUE DILIGENCE PERIOD.**

**6i.** 245. **Survey:** A survey ☐ **shall** ☒ **shall not** be performed. If to be performed, the survey shall be performed by a licensed
246. surveyor within the Due Diligence Period or _____ days after Contract acceptance.

247. Cost of the survey shall be paid by ☐ Seller ☐ Buyer ☐ Other: _____

248. The survey shall be performed in accordance with the Arizona State Board of Technical Registration's "Arizona Land Boundary
249. Survey Minimum Standards".

**6j.** 250. Survey instructions are:            ☐ A boundary survey and survey plat showing the corners either verified
251.                                              or monumentation.
252.                                          ☐ A survey certified by a licensed surveyor, acceptable to Buyer and the Title
253.                                              Company, in sufficient detail for an American Land Title Association ("ALTA")
254.                                              Owner's Policy of Title Insurance with boundary, encroachment or survey
255.                                              exceptions and showing all improvements, utility lines and easements on
256.                                              the Property or within five (5) feet thereof.
257.                                          ☐ Other survey terms: _____
258.                                              _____
259.                                              _____
260.                                              _____
261.                                                     **(BUYER'S INITIALS REQUIRED)** *CA*
                                                                                            BUYER            BUYER

**6k.** 262. **WELL WATER/WATER RIGHTS: IF WELL WATER/WATER RIGHTS IS/ARE A MATERIAL MATTER TO THE BUYER, IT**
263. **MUST BE VERIFIED BY BUYER DURING THE DUE DILIGENCE PERIOD.**

**6l.** 264. **BUYER ACKNOWLEDGMENT: BUYER RECOGNIZES, ACKNOWLEDGES AND AGREES THAT BROKER(S) ARE**
265. **NOT QUALIFIED, NOR LICENSED, TO CONDUCT DUE DILIGENCE WITH RESPECT TO THE PROPERTY OR THE**
266. **SURROUNDING AREA. BUYER IS INSTRUCTED TO CONSULT WITH QUALIFIED LICENSED PROFESSIONALS TO**
267. **ASSIST IN BUYER'S DUE DILIGENCE EFFORTS. BECAUSE CONDUCTING DUE DILIGENCE WITH RESPECT TO THE**
268. **PROPERTY AND SURROUNDING AREA IS BEYOND THE SCOPE OF THE BROKERS EXPERTISE AND LICENSING,**
269. **BUYER EXPRESSLY RELEASES AND HOLDS HARMLESS BROKER(S) FROM LIABILITY FOR ANY DEFECTS OR**
270. **CONDITIONS THAT COULD HAVE BEEN DISCOVERED BY INSPECTION OR INVESTIGATION.**
271.                                                     **(BUYER'S INITIALS REQUIRED)** *CA* _____  _____
                                                                                            BUYER            BUYER
                                                                                                                >>

| SELLER | SELLER | <Initials | | | Initials> | *CA* BUYER | BUYER | |

Electronically Signed using eSignOnline™ [ Session ID : fbcf67eb-6610-4051-bd13-d0856ddad591 ]

**EXHIBIT B**

Case: 19-51152    Doc# 185    Filed: 04/02/21    Entered: 04/02/21 06:07:30    Page 14 of 26

**6m.** 272. **Due Diligence Period Notice:** Prior to expiration of the Due Diligence Period, Buyer shall deliver to Seller a signed notice of
273. any items disapproved. AAR's Vacant Land/Lot Buyer's Due Diligence Notice and Seller's Response form is available for this
274. purpose. Buyer shall conduct all desired inspections and investigations prior to delivering such notice to Seller and all Due
275. Diligence Period items disapproved shall be provided in a single notice.

**6n.** 276. **Buyer Disapproval:** If Buyer, in Buyer's sole discretion, disapproves of any aspect of the Property, financing, title, or other
277. matter, Buyer shall deliver to Seller notice of the items disapproved and state in the notice that Buyer elects to either:
278.     (1) immediately cancel this Contract and all Earnest Money shall be released to Buyer, or
279.     (2) provide the Seller an opportunity to correct the items disapproved, in which case:
280.         (a) Seller shall respond in writing within five (5) days or _____ days after delivery to Seller of Buyer's notice of
281.         items disapproved. Seller's failure to respond to Buyer in writing within the specified time period shall
282.         conclusively be deemed Seller's refusal to correct any of the items disapproved.
283.         **(b) If Seller agrees in writing to correct item(s) disapproved, Seller shall correct the items, complete any**
284.         **repairs in a workmanlike manner and deliver any paid receipts evidencing the corrections and repairs**
285.         **to Buyer three (3) days or _____ days prior to COE Date.**
286.         (c) If Seller is unwilling or unable to correct any of the items disapproved, Buyer may cancel this Contract within five
287.         (5) days after delivery of Seller's response or after expiration of the time for Seller's response, whichever occurs first,
288.         and all Earnest Money shall be released to Buyer. If Buyer does not cancel this Contract within the five (5) days as
289.         provided, Buyer shall close escrow without correction of those items that Seller has not agreed in writing to correct.

290. VERBAL DISCUSSIONS WILL NOT EXTEND THESE TIME PERIODS. Only a written agreement signed by both parties will
291. extend response times or cancellation rights.

292. BUYER'S FAILURE TO GIVE NOTICE OF DISAPPROVAL OF ITEMS OR CANCELLATION OF THIS CONTRACT WITHIN
293. THE SPECIFIED TIME PERIOD SHALL CONCLUSIVELY BE DEEMED BUYER'S ELECTION TO PROCEED WITH THE
294. TRANSACTION WITHOUT CORRECTION OF ANY DISAPPROVED ITEMS.

**6o.** 295. **Inspection(s):** Seller grants Buyer and Buyer's inspector(s) reasonable access to conduct inspection(s) of the Property for
296. the purpose of satisfying Buyer that any corrections agreed to by the Seller have been completed and that the Property is in
297. substantially the same condition as on the date of Contract acceptance. If Buyer does not conduct such inspection(s), Buyer
298. releases Seller and Broker(s) from liability for any defects that could have been discovered.

## 7. REMEDIES

**7a.** 299. **Cure Period:** A party shall have an opportunity to cure a potential breach of this Contract. If a party fails to comply with any
300. provision of this Contract, the other party shall deliver a notice to the non-complying party specifying the non-compliance. If
301. the non-compliance is not cured within three (3) days after delivery of such notice ("Cure Period"), the failure to comply shall
302. become a breach of Contract.

**7b.** 303. **Breach:** In the event of a breach of Contract, the non-breaching party may cancel this Contract and/or proceed against the
304. breaching party in any claim or remedy that the non-breaching party may have in law or equity, subject to the Alternative
305. Dispute Resolution obligations set forth herein. In the case of the Seller, because it would be difficult to fix actual damages
306. in the event of Buyer's breach, the Earnest Money may be deemed a reasonable estimate of damages and Seller may, at
307. Seller's option, accept the Earnest Money as Seller's sole right to damages. An unfulfilled contingency is not a breach of
308. Contract. The parties expressly agree that the failure of any party to comply with the terms and conditions of Section 1f to
309. allow COE to occur on the COE Date, if not cured after a cure notice is delivered pursuant to Section 7a, will constitute a
310. material breach of this Contract, rendering the Contract subject to cancellation.

**7c.** 311. **Alternative Dispute Resolution ("ADR"):** Buyer and Seller agree to mediate any dispute or claim arising out of or relating
312. to this Contract in accordance with the REALTORS® Dispute Resolution System, or as otherwise agreed. All mediation costs
313. shall be paid equally by the parties. In the event that mediation does not resolve all disputes or claims, the unresolved disputes
314. or claims shall be submitted for binding arbitration. In such event, the parties shall agree upon an arbitrator and cooperate in
315. the scheduling of an arbitration hearing. If the parties are unable to agree on an arbitrator, the dispute shall be submitted to
316. the American Arbitration Association ("AAA") in accordance with the AAA Arbitration Rules for the Real Estate Industry. The
317. decision of the arbitrator shall be final and nonappealable. Judgment on the award rendered by the arbitrator may be entered in
318. any court of competent jurisdiction. Notwithstanding the foregoing, either party may opt out of binding arbitration within thirty (30)
319. days after the conclusion of the mediation conference by notice to the other and in such event either party shall have the right to
320. resort to court action.

**7d.** 321. **Exclusions from ADR:** The following matters are excluded from the requirement for ADR hereunder: (i) any action brought in the
322. Small Claims Division of an Arizona Justice Court (up to $3,500) so long as the matter is not thereafter transferred or removed from
323. the small claims division; (ii) judicial or nonjudicial foreclosure or other action or proceeding to enforce a deed of trust, mortgage, or
324. agreement for sale; (iii) an unlawful entry or detainer action; (iv) the filing or enforcement of a mechanic's lien; or (v) any matter that
325. is within the jurisdiction of a probate court. Further, the filing of a judicial action to enable the recording of a notice of pending action

>>

Vacant Land/Lot Purchase Contract • Updated: October 2019
Copyright © 2019 Arizona Association of REALTORS®.
All rights reserved.

<Initials    *[signature]*    Initials> *CA*

SELLER    SELLER          BUYER    BUYER

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

Papago Land

Electronically Signed using eSignOnline™ [ Session ID : fbcf67eb-6610-4051-bd13-d0856ddad591 ]

**EXHIBIT B**

*Vacant Land/Lot Purchase Contract >>*

326. ("lis pendens") or order of attachment, receivership, injunction, or other provisional remedies shall not constitute a waiver of the
327. obligation to submit the claim to ADR, nor shall such action constitute a breach of the duty to mediate or arbitrate.

**7e.** 328. **Attorneys Fees and Costs:** The prevailing party in any dispute or claim between Buyer and Seller arising out of or relating to
329. this Contract shall be awarded their reasonable attorney fees and costs. Costs shall include, without limitation, attorney fees,
330. expert witness fees, fees paid to investigators, and arbitration costs.

## 8. ADDITIONAL TERMS AND CONDITIONS

**8a.** 331. Buyer acknowledges that the buyer's agents are also members of the purchasing entity.
332. _____
333. Final COE date to be 7 days following the BK hearing.
334. _____
335. _____
336. _____
337. _____
338. _____
339. _____
340. _____
341. _____
342. _____
343. _____
344. _____
345. _____
346. _____
347. _____
348. _____
349. _____
350. _____
351. _____
352. _____
353. _____
354. _____
355. _____
356. _____
357. _____
358. _____
359. _____
360. _____

**8b.** 361. **Risk of Loss:** If there is any loss or damage to the Property between the date of Contract acceptance and COE or
362. possession, whichever is earlier, by reason of fire, vandalism, flood, earthquake, or act of God, the risk of loss shall be on the
363. Seller, provided, however, that if the cost of repairing such loss or damage would exceed ten percent (10%) of the purchase
364. price, either Seller or Buyer may elect to cancel the Contract.

**8c.** 365. **Permission:** Buyer and Seller grant Broker(s) permission to advise the public of this Contract.

**8d.** 366. **Arizona Law:** This Contract shall be governed by Arizona law and jurisdiction is exclusively conferred on the State of Arizona.

**8e.** 367. **Time is of the Essence:** The parties acknowledge that time is of the essence in the performance of the obligations
368. described herein.

>>

Vacant Land/Lot Purchase Contract • Updated: October 2019
Copyright © 2019 Arizona Association of REALTORS®.
All rights reserved.

<Initials    SELLER    SELLER    Initials>    CA    BUYER    BUYER

Page 8 of 10

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026    www.ziplogix.com

Papago Land

Electronically Signed using eSignOnline™ [ Session ID : fbcf67eb-6610-4051-bd13-d0856ddaf591 ]

**EXHIBIT B**

**Vacant Land/Lot Purchase Contract >>**

**8f.** 369. **Compensation:** Seller and Buyer acknowledge that Broker(s) shall be compensated for services rendered as previously agreed
370. by separate written agreement(s), which shall be delivered by Broker(s) to Escrow Company for payment at COE, if not previously
371. paid. If Seller is obligated to pay Broker(s) this Contract shall constitute an irrevocable assignment of Seller's proceeds at COE.
372. If Buyer is obligated to pay Broker(s), payment shall be collected from Buyer as a condition of COE. COMMISSIONS PAYABLE
373. FOR THE SALE, LEASING, OR MANAGEMENT OF PROPERTY ARE NOT SET BY ANY BOARD OR ASSOCIATION OF
374. REALTORS®, OR MULTIPLE LISTING SERVICE, OR IN ANY MANNER OTHER THAN BETWEEN THE BROKER AND CLIENT.

**8g.** 375. **Copies and Counterparts:** A fully executed facsimile or electronic copy of the Contract shall be treated as an original
376. Contract. This Contract and any other documents required by this Contract may be executed by facsimile or other
377. electronic means and in any number of counterparts, which shall become effective upon delivery as provided for herein.
378. All counterparts shall be deemed to constitute one instrument, and each counterpart shall be deemed an original.

**8h.** 379. **Days:** All references to days in this Contract shall be construed as calendar days and a day shall begin at 12:00 a.m. and
380. end at 11:59 p.m.

**8i.** 381. **Calculating Time Periods:** In computing any time period prescribed or allowed by this Contract, the day of the act or event
382. from which the time period begins to run is not included and the last day of the time period is included. Contract acceptance
383. occurs on the date that the signed Contract (and any incorporated counter offer) is delivered to and received by the
384. appropriate Broker. Acts that must be performed three days prior to the COE Date must be performed three full days prior (i.e.,
385. if COE Date is Friday the act must be performed by 11:59 p.m. on Monday).

**8j.** 386. **Entire Agreement:** This Contract, and any addenda and attachments, shall constitute the entire agreement between Seller
387. and Buyer, shall supersede any other written or oral agreements between Seller and Buyer and can be modified only by a
388. writing signed by Seller and Buyer. The failure to initial any page of this Contract shall not affect the validity or terms of this
389. Contract.

**8k.** 390. **Subsequent Offers:** Buyer acknowledges that Seller has the right to accept subsequent offers until COE. Seller understands
391. that any subsequent offer accepted by the Seller must be a backup offer contingent on the cancellation of this Contract.

**8l.** 392. **Cancellation:** A party who wishes to exercise the right of cancellation as allowed herein may cancel this Contract by
393. delivering notice stating the reason for cancellation to the other party or to the Escrow Company. Cancellation shall become
394. effective immediately upon delivery of the cancellation notice.

**8m.** 395. **Notice:** Unless otherwise provided, delivery of all notices and documentation required or permitted hereunder shall be in
396. writing and deemed delivered and received when: (i) hand-delivered; (ii) sent via facsimile transmission; (iii) sent via electronic
397. mail, if email addresses are provided herein; or (iv) sent by recognized overnight courier service, and addressed to Buyer as
398. indicated in Section 8q, to Seller as indicated in Section 9a and to the Escrow Company indicated in Section 3a.

**8n.** 399. **Earnest Money:** Earnest Money is in the form of: ☐ Personal Check ☒ Other **Business Check**
400. If applicable, Earnest Money has been received by Broker named in Section 8q and upon acceptance of this offer will be
401. deposited with:☒ Escrow Company ☐ Broker's Trust Account. Buyer acknowledges that failure to pay the required
402. closing funds by the scheduled Close of Escrow, if not cured after a cure notice is delivered pursuant to Section 7a, shall be
403. construed as a material breach of this contract and all earnest money shall be subject to forfeiture.

**8o.** 404. **RELEASE OF BROKER(S): SELLER AND BUYER HEREBY EXPRESSLY RELEASE, HOLD HARMLESS AND INDEMNIFY
405. BROKER(S) IN THIS TRANSACTION FROM ANY AND ALL LIABILITY AND RESPONSIBILITY REGARDING FINANCING, THE
406. CONDITION, SQUARE FOOTAGE/ACREAGE, LOT LINES, BOUNDARIES, VALUE, RENT ROLLS, ENVIRONMENTAL
407. PROBLEMS, SANITATION SYSTEMS, ABILITY TO DIVIDE OR SPLIT THE PROPERTY, BUILDING CODES, GOVERNMENTAL
408. REGULATIONS, INSURANCE, PRICE AND TERMS OF SALE, RETURN ON INVESTMENT, OR ANY OTHER MATTER
409. RELATING TO THE VALUE OR CONDITION OF THE PROPERTY.**

410. (BUYER'S AND SELLER'S INITIALS REQUIRED) _____ _____ _CA_ _____
SELLER     SELLER     BUYER     BUYER

**8p.** 411. **Terms of Acceptance:** This offer will become a binding Contract when acceptance is signed by Seller and
412. a signed copy delivered in person, by mail, facsimile or electronically, and received by Broker named in Section 8q.

413. by _____**March 11**_____ , 2021 · at _**5:00**_ ☐ a.m. / ☒ p.m., Mountain Standard Time. Buyer
414. may withdraw this offer at any time prior to receipt of Seller's signed acceptance. If no signed acceptance is received by this
415. date and time, this offer shall be deemed withdrawn and the Buyer's Earnest Money shall be returned.

416. THIS CONTRACT CONTAINS TEN PAGES EXCLUSIVE OF ANY ADDENDA AND ATTACHMENTS. ENSURE THAT YOU HAVE
417. RECEIVED AND READ ALL TEN PAGES OF THIS OFFER AS WELL AS ANY ADDENDA AND ATTACHMENTS.

>>

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com   Papago Land

Electronically Signed using eSignOnline™ [ Session ID : fbcf67eb-6610-4051-bd13-d0856dda0591 ]

**EXHIBIT B**

Case: 19-51152   Doc# 185   Filed: 04/02/21   Entered: 04/02/21 06:07:30   Page 17 of 26

**Vacant Land/Lot Purchase Contract >>**

8q. 418. Broker on behalf of Buyer:

419. Craig Allen             ca171
PRINT SALESPERSON'S NAME    AGENT MLS CODE    AGENT STATE LICENSE NO.

420. Turf Realty         turf001

421. 2610 W. Baseline Rd #106     Phoenix     AZ   85041

8r. 422. (480) 818-1345     (602) 680-4915     craigtallen@gmail.com
PREFERRED TELEPHONE    FAX    EMAIL

423. Agency Confirmation: The Broker named in Section 8q above is the agent of (check one):

8s. 424. ☒ the Buyer; ☐ the Seller; or ☐ both the Buyer and Seller

425. The undersigned agree to purchase the Premises on the terms and conditions herein stated and acknowledge receipt
426. of a copy hereof including the Buyer Attachment.

427. *Craig Allen*     03/10/2021
^ BUYER'S SIGNATURE    MO/DA/YR    ^ BUYER'S SIGNATURE    MO/DA/YR
339 Properties LLC

428. 2610 W Baseline Rd #106
ADDRESS    ADDRESS

429. Phoenix, AZ 85041
CITY, STATE, ZIP CODE    CITY, STATE, ZIP CODE

# 9. SELLER ACCEPTANCE

9a. 430. Broker on behalf of Seller:

431. Beth Jo Zeitzer     bz003     BR044331000
PRINT SALESPERSON'S NAME    AGENT MLS CODE    AGENT STATE LICENSE NO.

432. ROI Properties     roip01
PRINT FIRM NAME    FIRM MLS CODE

433.
FIRM ADDRESS    STATE    ZIP CODE    FIRM STATE LICENSE NO.

434. (602) 319-1326     (602) 522-2014     rmarvel@roiproperties.com
PREFERRED TELEPHONE    FAX    EMAIL

9b. 435. Agency Confirmation: The Broker named in Section 9a above is the agent of (check one):
436. ☒ the Seller; or ☐ both the Buyer and Seller

9c. 437. The undersigned agree to sell the Premises on the terms and conditions herein stated, acknowledge receipt of a
438. copy hereof and grant permission to Broker named in Section 9a to deliver a copy to Buyer.

439. ☐ Counter Offer is attached, and is incorporated herein by reference. Seller should sign both this offer and the Counter Offer.
440. XXX If there is a conflict between this offer and the Counter Offer, the provisions of the Counter Offer shall be controlling.

441. [signature]     3-17-21
^ SELLER'S SIGNATURE    MO/DA/YR    ^ SELLER'S SIGNATURE    MO/DA/YR
442. Frode Hjelmeset, aka Fred Hjelmeset, Chapter 7 Trustee for Bankruptcy Estate of Chan ase #19-51152, ND, CA
SELLER'S NAME PRINTED    SELLER'S NAME PRINTED

443.
ADDRESS    ADDRESS

444.
CITY, STATE, ZIP CODE    CITY, STATE, ZIP CODE

☐ OFFER REJECTED BY SELLER: _____
MONTH    DAY    YEAR    (SELLER'S INITIALS)

For Broker Use Only:
Brokerage File/Log No. _____ Manager's Initials _____ Broker's Initials _____ Date _____ MO/DA/YR

Vacant Land/Lot Purchase Contract • Updated: October 2019
Copyright © 2019 Arizona Association of REALTORS®.
All rights reserved.

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipLogix.com   Papago Land

Electronically Signed using eSignOnline™ [ Session ID fbcf67eb-6610-4051-bd13-d0856ddad591 ]

**EXHIBIT B**

Case: 19-51152   Doc# 185   Filed: 04/02/21   Entered: 04/02/21 06:07:30   Page 18 of 26

**BANKRUPTCY ADDENDUM**

This Bankruptcy Addendum (the "Bankruptcy Addendum") is issued by **Fred Hjelmeset, Ch 7 Trustee for the Bankruptcy Estate of Chuan Min Chang aka Jack Chang dba Jack's Construction and Chiu Chuan Wang aka Alice Wang, Case #19-51152,** ("Seller"), to ___339 Properties LLC_____ ("Buyer"). This Bankruptcy Addendum modifies the terms of that certain Residential Resale Real Estate Purchase Contract dated _3-10-2021_____ (the "Offer"), by Buyer, concerning the property commonly known as **Assessor's Parcel Number 510-04-020A, N Papago Rd & E Allegro Rd, Maricopa, AZ 85139,** (the "Premises" or "Property"). This Bankruptcy Addendum hereby supersedes any conflicting provisions contained in the Offer.

1.     **Sale is Subject to U.S.Bankrptcy Court Approval:** The sale of the Property is subject to the Approval of the United States Bankruptcy Court, Northern District of California, San Jose Division ("Bankruptcy Court"). All sales are subject to higher and better offer. In the event that a timely overbid is received, the Seller's broker will contact the Buyer's broker and provide a date and time for a telephonic overbid auction. Seller will seek Bankruptcy Court Approval of a sale of the Property to Buyer, but only after Buyer withdraws all purchase contingencies. The decision of the Bankruptcy Court not to approve the sale of the Property to the Buyer shall not constitute a breach of the Agreement or this Bankruptcy Addendum by the Seller. "Approval" as used in this Bankruptcy Addendum means entry of one or more orders by the Bankruptcy Court approving the sale, including such approval as is necessary to sell and convey title. It is estimated that the time period for approval is from 30 to 60 days. Buyer's possession shall occur ONLY upon recordation of a deed transferring ownership of the Property to the Buyer.

2.     **Status on MLS:** Buyer is aware that the property shall remain in Active status on MLS until the Bankruptcy Court hearing is held. However, the Public Remarks shall be modified to inform prospective buyers and agents of the existence of an offer in escrow.

3.     **As Is/ Where Is Sale:** Seller is selling and Buyer is purchasing the Property in its present "as is/ where is" condition without representation or warranties of any kind. Buyer is not relying on Seller or Seller's agents as to the condition or safety of the Property and/or any improvements thereon, including but not necessarily limited to electrical, plumbing, heating, sewer, roof, air conditioning, foundations, soils and geology, lot size, boundary locations, or suitability of the Property and/or its improvements for particular purposes, or that any components of the Property are in working order, or that improvements are structurally sound and/or in compliance with any city, county, state, and/or federal statutes, codes, or ordinances. Seller will not be obligated to make any changes, alterations, or repairs to the Property. Any reports or corrective work required by Buyer's lender is to be the sole responsibility of Buyer. The closing of the transaction shall constitute acknowledgment by Buyer that the premises are accepted without representation or warranty of any kind and in their present "as is" condition based solely on Buyer's own inspections and investigations. Seller does not warrant existing structures as to habitability or suitability for occupancy. Buyer assume responsibility to check with appropriate planning authority regarding Buyer's intended

Seller  Seller |____                    Page **1** of **5**                    CA___|___
                                                                              Buyer Buyer

Electronically Signed using eSignOnline™ [ Session ID : 46117cf2-69b0-4847-961c-63a120d77568 ]

use of the Property and agrees to hold Seller and Seller's agents harmless as to Buyer's intended use.

**4.** **Inspection Period and Studies:** Notwithstanding anything contained to the contrary in the Offer, Buyer shall have **14 days** after the full execution of the Contract, for its Inspection Period (as that term is defined in the Offer). Buyer hereby acknowledges that it is Buyer's sole responsibility to obtain inspection reports for the Property, by qualified professionals, and to determine the presence of any toxic or hazardous substances on the Property which would make it uninhabitable or dangerous to the health of the occupants, or other factors regarding the Property, about which Buyer may be concerned. No inspections may be made without prior notice to Seller. In the event the inspection reveals material deficiencies, Purchaser may cancel the Contract within the Inspection Period, and receive a return of its Earnest Money Deposit (as that term is defined in the Offer). To cancel, Buyer must, within the Inspection Period, provide Seller with written notice of cancellation, together with the inspection reports and a written designation of the deficiencies.

**5.** **On-Site Waste Water Treatment/Septic System:** Notwithstanding anything contained herein, or within the Purchase Contract or other AAR Addenda to the contrary, and in the event there is an on-site waste water treatment system/septic system on premises, Seller will provide necessary pumping/inspection, but will not make ANY repairs to system. Buyer to be responsible for the cost of the inspection and certification, as well as all repairs, lender required or otherwise.

**6.** **Assignee/Nominee:** Notwithstanding anything contained herein to the contrary, Buyer may assign the contract to any buyer/nominee owned 51% or more, by Buyer named in this Addendum and Line 1 of the Purchase Contract.

**7.** **Closing:** Lines 24 through 28 of the Offer are hereby amended to provide that the close of escrow shall occur not later than fourteen (14) business days plus three (3) days for mailing after the Bankruptcy Court has entered an order approving the Contract. No extensions shall be granted.

**8.** **Title Company:** Buyer to deliver earnest money to escrow company within twenty-four (24) hours of fully executed contract. Seller shall provide Buyer with a Commitment for Title Insurance from **Pioneer Title Agency** (Title Company), and the Escrow Agent shall be **Jennifer Siverio** at **(602) 943-0184, jennifer.siverio@ptaaz.com..** Seller makes no representations or warranties regarding same.

**9.** **Title Commitment and Title Insurance:** Notwithstanding anything herein to the contrary, Seller shall convey the Property to Buyer by Trustee's Deed.

**10.** **Release of Earnest Money:** The words "and indemnify" shall be deleted from line 124.

**11.** **Homeowner's Association:** Property may be governed by a Homeowner's Association. Buyer acknowledges and recognizes that the Seller is a bankruptcy trustee

Seller Seller      Page **2** of 5      _CA_ | Buyer Buyer

Electronically Signed using eSignOnline™ | Session ID : 46117cf2-69b0-4847-961o-63a120d77568 |

and, thus, lacks personal knowledge of the fees associated with the H.O.A. Buyer to be responsible for all fees including but not limited to Transfer Fees, Capital Improvement Fees, and Prepaid Fees at close of escrow. Seller to be responsible for Disclosure Fee. Any current homeowner's association assessment which is a lien as of the close of escrow shall be paid by Seller. Buyer to be solely responsible for verifying all Homeowner's Association fees and information.

12. **Bankruptcy /No Representations or Warranties/Condition of Property:**

Lines 143 through 153 are deleted in their entirety and replaced with the following

"Buyer irrevocably waives all rights to a Vacant Land/Lot Seller Property Disclosure Statement and irrevocably releases Seller from providing Buyer with such Seller Property Disclosure Statement."

Lines 154 through 159 are deleted in their entirety.

Lines 168 through 171 are deleted in their entirety.

Lines 179 through 181 are hereby deleted and replaced with:

"Condition of Premises: Seller makes no warranty to Buyer, either express or implied, as to the condition, zoning, or fitness for any particular use or purpose of the Premises. Buyer is advised to conduct independent inspections and investigations regarding the Premises within the Inspection Period as specified in Section 6a."

Lines 182 through 188 are deleted in their entirety.

13. The follow shall be deleted from Lines 161 through 162: "Further, Seller is not the subject of a bankruptcy, insolvency or probate proceeding".

14. **Alternative Dispute Resolution (ADR):** Lines 311 through 320 are deleted in their entirety.

15. **Compensation:** Lines 369 through 374 are deleted in their entirety and replaced with:

"Commissions shall be paid only upon Bankruptcy Court approval of the sale of the Property and only from the proceeds of sale of the Property. If an approved sale does not close and fund, no commission shall be due or paid."

16. **Subsequent Offers:** Lines 390 through 391 are deleted in their entirety.

17. **Bankruptcy Court Jurisdiction:** This Contract is subject to the jurisdiction of the Northern District of California, San Jose Division, Bankruptcy Court. This Contract is entered into, and relates to, real property situated in Pinal County, Arizona. The Contract shall be governed by and constructed in accordance with the laws of the State

Seller  Seller           Page **3** of **5**        *CA* Buyer  Buyer

Electronically Signed using eSignOnline™ | Session ID  46117cf2-69b0-4847-961c-63a120d77568 ]

of California. Buyer and Seller irrevocably submit to the jurisdiction of the Bankruptcy Court and irrevocably agree that any and all claims relating to this contract shall be brought in connection with the Bankruptcy Court.

**18. Communication:** All communications or notices required or permitted to be given or served under this Contract shall be in writing and shall be deemed to have been duly given or made if: (a) delivered in person or by courier (e.g. Federal Express), (b) deposited in the United States mail, postage prepaid, or mailing by certified mail, return receipt requested, or (c) sent via facsimile and addressed to the intended recipient at the address and/or the facsimile number set forth below such party's signature at the end of this Contract. All communications and notices shall be effective upon delivery in person or by courier, upon being deposited in the United States mail or being sent by facsimile, if sent by facsimile during normal business hours, as the case may be. Any party may change his or her address and/or facsimile number by giving notice in writing, stating his or her new address and/or facsimile number, to all of the other parties in the foregoing manner. Copies of all notices shall be delivered to the Escrow Agent.

All payments shall be in United States currency and in immediately available funds (wire transfer or cashier's check). The parties shall execute and deliver any additional documents required under the Contract or necessary to complete the Contract as provided herein, both prior to and following Closing. Possession and risk of loss in connection with the Property shall be transferred by Seller at Closing.

| | |
|---|---|
| **Seller:** | **Fred Hjelmeset, Ch 7 Trustee for the Bankruptcy Estate of Chuan Min Chang aka Jack Chang dba Jack's Construction and Chiu Chuan Wang aka Alice Wang, Case #19-51152** |

**By:** _Fred Hlmt_

**Dated:** 3-12-21

**Buyer:** _Craig Allen_

**By:** Craig Allen, Manager, 339 Properties LLC

**Dated:** 03/11/2021

____ | ____
Seller  Seller

Page **4** of **5**

CA___ | ___
Buyer Buyer

Electronically Signed using eSignOnline™ [ Session ID : 46117cf2-69b0-4847-061o-63a120d77568 ]

**EXHIBIT B**

Buyer:  _____

By:  _____

Dated:  _____

| Seller Seller | Page **5** of **5** | *CA*___ | ___<br>Buyer Buyer |

Electronically Signed using eSignOnline™ [ Session ID : 46117cf2-69b0-4847-961o-63a120d77568 ]

EXHIBIT B

Case: 19-51152    Doc# 185    Filed: 04/02/21    Entered: 04/02/21 06:07:30    Page 23 of 26

# VACANT LAND/LOT BUYER'S DUE DILIGENCE NOTICE
# AND SELLER'S RESPONSE



The pre-printed portion of this form has been drafted by the Arizona Association of REALTORS®. Any change in the pre-printed language of this form must be made in a prominent manner. No representations are made as to the legal validity, adequacy and/or effects of any provision, including tax consequences thereof. If you desire legal, tax or other professional advice, please consult your attorney, tax advisor or professional consultant.



1. Seller: **Fred Hjelmeset, Ch 7 Trustee, BK of Chuan Min Chang**

2. Buyer: **339 Properties LLC**

3. Property Address or Assessor's #(s): **#510-40-020A,**

4. Date: **March 30, 2021**

## BUYER DUE DILIGENCE INSPECTIONS AND INVESTIGATIONS COMPLETED

**Buyer has completed all desired Due Diligence Period items to satisfy Buyer with respect to the physical condition of the Property, financing, appraised value, the condition of title to the Property and as to the feasibility and suitability of the Property for Buyer's intended purpose, such as:**

(a) physical, environmental, and other inspections and investigations;
(b) inquiries and consultations with government agencies, lenders, insurance agents, architects, and other persons and entities;
(c) investigations of applicable building, zoning, fire, health, and safety codes;
(d) inquiries regarding sex offenders and the occurrence of a disease, natural death, suicide, homicide or other crime on the Property or in the vicinity;
(e) inspections and investigations pertaining to square footage/acreage, sewer, flood hazard, site/soil evaluation, land divisions, roads, survey and water well/water rights;
(f) inspections and investigations of any other items important to the Buyer.

**Buyer has verified all information deemed important including:**
(a) MLS or listing information; and
(b) all other information obtained regarding the Property.

**Buyer acknowledges that:**
(a) All desired Due Diligence Period inspections and investigations must be completed prior to delivering this notice to Seller;
(b) All Due Diligence Period items disapproved must be provided in this notice;
(c) Buyer's election is limited to the options specified below;
(d) Buyer is not entitled to change or modify Buyer's election after this notice is delivered to Seller.

**Buyer elects as follows:**
☒ Property Accepted – No corrections requested. Buyer accepts the Property in its present condition and no corrections or repairs are requested.
☐ Property Rejected – Buyer disapproves of the items listed below and elects to immediately cancel the Contract.
☐ Buyer elects to provide Seller an opportunity to correct the disapproved items listed below.

**Items disapproved:** _____

_____

_____

_____

_____

_____

_____

_____

**Buyer acknowledges that the Broker(s):** (1) make no representations concerning the competency of any inspectors, contractors and/or repair persons and assume no responsibility for any deficiencies or errors made; and (2) neither the Seller nor Broker(s) are experts at detecting or repairing physical defects in the Property. The undersigned agrees to the modified or additional terms and conditions, if any, and acknowledges receipt of a copy hereof.

*Craig Allen*                                    03/30/2021
^ BUYER'S SIGNATURE                           MO/DA/YR          ^ BUYER'S SIGNATURE                    MO/DA/YR
**339 Properties LLC**

>>

Vacant Land/Lot Buyer's Due Diligence Notice and
Seller's Response • Updated: February 2013
Copyright © 2013 Arizona Association of REALTORS®. All rights reserved.

Turf Realty, 2610 W. Baseline Rd #106 Phoenix, AZ 85041
Phone: (480)818-1345        Fax:                    Craig Allen                                    Smith Land

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.ziplogix.com

Electronically Signed using eSignOnline™ [ Session ID : c659c8ae-89e5-4abd-bb40-889381c2fe79 ]

**EXHIBIT B**

*Vacant Land/Lot Buyer's Due Diligence Notice and Sellers Response >>*

Property Address or Assessor's #(s): **#510-40-020A,** _____

## BUYER'S WAIVER OF INSPECTIONS

BUYER ACKNOWLEDGES THAT BUYER WAS ADVISED TO OBTAIN INSPECTIONS OF THE PROPERTY BY QUALIFIED INSPECTOR(S) AND BUYER DECLINED. By acting against the Broker's advice, Buyer accepts responsibility and hereby releases, indemnifies and holds harmless Brokers from any and all liability for all matters that professional inspections could have revealed.

| | |
|---|---|
| ^ BUYER'S SIGNATURE | MO/DA/YR |
| ^ BUYER'S SIGNATURE | MO/DA/YR |

# SELLER'S RESPONSE
**TO BE COMPLETED ONLY IF BUYER PROVIDES SELLER AN OPPORTUNITY TO CORRECT ITEMS DISAPPROVED ON PAGE 1.** (See Section 6N)

If Buyer provides Seller an opportunity to correct items disapproved, Seller shall respond within five (5) days or otherwise specified days after delivery of this notice.

**Seller responds as follows:**

☐ Seller agrees to correct the items disapproved by Buyer pursuant to terms set forth herein and Section 6m of the Contract.
☐ Seller is unwilling or unable to correct any of the items disapproved by Buyer.
☐ Seller's response to Buyer's Notice is as follows: _____
_____
_____
_____
_____

The undersigned agrees to the modified or additional terms and conditions, if any, and acknowledges receipt of a copy hereof.

| | |
|---|---|
| ^ SELLER'S SIGNATURE — **Fred Hjelmeset, Ch 7 Trustee** | MO/DA/YR |
| ^ SELLER'S SIGNATURE — **BK of Chuan Min Chang** | MO/DA/YR |

# BUYER'S ELECTION
**TO BE COMPLETED ONLY IF SELLER HAS NOT AGREED TO CORRECT ALL ITEMS DISAPPROVED** (See Section 6N)

☐ Buyer elects to cancel this Contract
☐ Buyer accepts the Seller's response to Buyer's Notice and agrees to close escrow without correction of those items Seller has not agreed in writing to correct.

The undersigned agrees to the modified or additional terms and conditions, if any, and acknowledges receipt of a copy hereof.

| | |
|---|---|
| ^ BUYER'S SIGNATURE | MO/DA/YR |
| ^ BUYER'S SIGNATURE | MO/DA/YR |

Vacant Land/Lot Buyer's Due Diligence Notice and
Seller's Response • Updated: February 2013
Copyright © 2013 Arizona Association of REALTORS®. All rights reserved.

Produced with zipForm® by zipLogix  18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

Smith Land



Electronically Signed using eSignOnline™ [ Session ID : c659c8ae-89e5-4abd-bb40-889381c2fe79 ]

**EXHIBIT B**

Case: 19-51152    Doc# 185    Filed: 04/02/21    Entered: 04/02/21 06:07:30    Page 25 of 26



**WELLS FARGO**

| Accounts ⌄ | Brokerage | Transfer & Pay ⌄ | Plan & Le |

🏠 Account Summary                                                    Switch Account ▼

**339 Properties**
Account ...4207   Routing Numbers

$60,311.79
Available balance

Transfer Money   Pay Bills   Send Money   Digital Wallet   View Statements

**Activity Summary**

| | | |
|---|---|---|
| Ending collected balance | as of 03/09/21 | $65,215.09 |
| Current posted balance | | $65,215.09 |
| Pending withdrawals/debits | | -$4,903.30 |
| Pending deposits/credits | | $0.00 |
| **Available balance** | | **$60,311.79** |